IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| VIPER NURBURGRING RECORD, LLC, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 18-4025-HLT-KGG |
| vs. | ) ) | |
| ROBBINS MOTOR CO., LLC, and CLAYTON ROBBINS, | ) ) ) | |
| Defendants. | ) ) | |

# MEMORANDUM & ORDER ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

Before the Court is the "Motion for Protective Order as to Defendants' Third-Party Subpoenas" filed by Plaintiff Viper Nurburgring Record LLC ("VNR" or "Plaintiff"). (Doc. 63.) Having considered the submissions of the parties, Defendants' motion is **GRANTED**.

## FACTUAL BACKGROUND

This is a copyright infringement case. Defendants have summarized the "nature of the case" in their motion as follows:

> VNR is an entity formed to set a world-record time for a production car on the infamous Nürburgring track in Nürburg, Germany. (Doc. 1, ¶8.) VNR organized two trips to the Nürburgring in 2017, using two 2017 Viper ACR vehicles provided by a sponsor for the record time attempts. (*Id.*, ¶9.) The world record attempts were documented by a professional photographer, Eric Meyers, who was hired by VNR to take photographs of

1

the record attempts. (*Id.*, ¶11.) Mr. Myers assigned ownership rights for his photographs to VNR. (*Id.*)

VNR solicited sponsorships online and within the Viper community. Third parties BJ Motors and Viper Exchange assisted in the VNR record efforts by supplying the vehicles. BJ Motors and Viper Exchange were both provided non-exclusive licenses to use the photographs from the world record attempts, including those photographs used by Defendants without authorization. Prior to this action, Defendants threatened to defame VNR's owner, Russ Oasis, and Viper Exchange within the Viper community if VNR filed suit seeking to enforce VNR's copyright rights. (Doc. 1, ¶30.) Defendants' litigation tactics continue their pre-suit pattern of harassment, and would impose an undue burden on Viper Exchange and BJ Motors.

VNR has already disclosed both BJ Motors and Viper Exchange as sponsors. VNR has already acknowledged that they provided the vehicles used and were provided a non-exclusive license to the photographs at issue.

(Doc. 63, at 1-2.)

Defendants provide the following additional statements in the factual background portion of their response brief:

Plaintiff's interrogatory responses indicate that at least part of the consideration offered for sponsorship was the Viper vehicles themselves. As of the date of this response, Plaintiff has not provided copies of any written agreements with BJ Motors and/or Viper Exchange related to the sponsorship. Plaintiff has not produced any correspondence between VNR and these entities related to the sponsorship or the photographs.

Plaintiff identified these two sponsors as entities that received a license to use the photographs at issue in exchange for sponsorship. On a very basic level, this is a

2

> similar arrangement to the agreement VNR made with
> Defendants. However, Plaintiff has not provided
> documents detailing the nature and extent of the
> sponsorship and license agreement. In turn, Defendants
> sent subpoenas to BJ Motors and Viper Exchange
> seeking documents reflecting the terms of the
> sponsorship agreement including the value of
> consideration exchanged.

(Doc. 68, at 2.)

Plaintiff brings the present motion seeking a Protective Order regarding the third-party subpoenas Defendants have served on BJ Motors and Viper Exchange. (Doc. 63.) Plaintiff contends that "[b]ecause the wide-ranging subpoenas served on BJ Motors and Viper Exchange seek information far beyond that which is relevant to VNR's claims or Defendants' defenses in this case, the Court should issue a protective order to place reasonable limits on their scope." (*Id.*, at 2.)

## ANALYSIS

**A. Legal Standards for Discovery.**

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's claim
> or defense and proportional to the needs of the case,
> considering the importance of the issues at state in the
> action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and
> whether the burden or expense of the proposed discovery
> outweighs its likely benefit. Information within this

3

> scope of discovery need not be admissible in evidence to be discoverable.

As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable. ***Holick v. Burkhart***, No. 16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

Discovery relevance is broadly construed. ***AKH Co., Inc. v. Universal Underwriters Ins. Co.***, 13-2003-JAR-KGG, 2015 WL 4523578, at *2 (D. Kan. July 27, 2015). As such, "discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." *Id*. "Federal Rule of Civil Procedure 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." ***Layne Christensen Co. v. Purolite Co.***, 271 F.R.D. 240, 244 (D. Kan. 2010) (quoting ***Seattle Times Co. v. Rhinehart***, 467 U.S. 20, 36 (1984)).

Fed.R.Civ.P. 45 governs subpoenas, with section (d) of that Rule relating to "protecting a person subject to a subpoena" as well as "enforcement." Subsection (d)(1) of the Rule states that

> [a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction – which may include lost earnings

and reasonable attorney's fees – on a party or attorney who fails to comply.

Subsection (d)(2)(B) relates to objections to subpoenas and states that

[a] person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises – or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

Subsection (d)(3)(A) requires the District Court to quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (ii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden. Fed.R.Civ.P. 26(c), however, allows a court to enter a protective order regarding a subpoena to protect a party

5

from annoyance, embarrassment or oppression. *Stewart v. Mitchell Transport*, No. 01-2546-JWL, 2002 WL 1558210, at *6 (D. Kan. July 11, 2002).

**B.       Disputed Portions of Subpoenas.** [1]

Both subpoenas include the same requests for production, numbered and worded identically. As such, the Court will address the various requests as to both subpoenas.

**1.       Modifications to/Work Done on Vipers (Requests 3, 4, 10, 11).**

Request No. 3 seeks "[a]ny documents related to any modifications you performed on the Vipers," while Request No. 10 asks for documents regarding prices charged for such modifications. (Doc. 63-1, at 6; Doc. 63-2, at 6.) Requests 4 and 11 seek the same such information as to "work performed on the Vipers" and related pricing. (*Id.*) Plaintiff argues that the information is sought only to "annoy and embarrass not only VNR but also the third party recipients, and may also prejudice VNR by interfering with its relationship with the third party recipients." (Doc. 63, at 5.) Plaintiff also argues that the requests are irrelevant. "The issues to be tried in this case are whether Defendants had the authority to use the copyrighted photographs and the damages that flow from any infringement.

---

[1] The Court notes that the parties have resolved their disputes regarding Requests Nos. 1 and 2 and that Requests Nos. 8 and 9 have been withdrawn.

Making modifications to a vehicle has no relation to copyright infringement or damages." (*Id.*)

> to the conduct of the parties that indeed negotiated for and received a license to use the photographs in exchange for sponsorship. Moreover, the information requested is relevant to the issue of monetary value and consideration provided to VNR in exchange for the licenses to use photographs. … Defendants are entitled to seek discovery on the terms of these agreements, including consideration exchanged in both monetary form and in the form of services and/or products provided. Defendants believe modifications to the vehicles were additional consideration in exchange for the licenses to the photographs. Information on the nature, extent, and value of those modifications and services is relevant to (1) the terms of the agreements, (2) the value and consideration of the sponsorship, (3) the value of the photographs/licenses, and (4) potential damages.

Defendants respond that the information is relevant because it relates

(Doc. 68, at 4.) Defendants continue that because Plaintiff is claiming actual damages,

> Plaintiff may seek compensation for 'the extent to which infringement has injured or destroyed the market value of the copyrighted work at the time of infringement.' The market value of the photographs may be estimated based on what other sponsors were willing to pay for the photographs or licenses to the photographs. For that reason, the consideration Plaintiff accepted from other sponsors for use of the same photographs is evidence of Plaintiff's claims for actual damages. Even if Plaintiff elects statutory damages, the value of licenses is still a relevant consideration in calculating damages.

(*Id.*, at 5 (citations omitted).)

7

Finally, Defendants contend that the information is relevant to their affirmative defense of unclean hands. (*Id*., at 6.) Defendants contend that "Plaintiff solicited sponsorships from individuals and entities based on this representation – that a production or 'stock' Viper would be used to break the world record." (*Id*.) Defendants further contend that the modifications performed on the Vipers at issue by third-parties BJ Motors and Viper Exchange were significant enough to "alter" the cars from "production" or "stock" status, thus making inaccurate Plaintiff's representations as to the production status of the car. (*Id*.)

Plaintiff replies that the modifications to the cars were related only to safety. (Doc. 72, at 2.) It contends that prior to the lawsuit, "Defendants threatened to destroy VNR and its owners' reputation in retribution for enforcing the terms of the license," and that these requests are an extension of that behavior (*Id*., at 3.)

> Those third parties have been dragged into this case for the purpose of annoying, harassing, and embarrassing them, and causing damage to their reputations. Calling VNR and its third-party sponsors cheaters does not make the requests relevant to (a) determining the scope of Defendants' license to use one or more pictures or (b) calculating damages suffered by VNR as a result of the alleged infringement.

(*Id*.)

The Court finds that the information sought by Defendants in Requests 3, 4, 10, and 11 is irrelevant to whether Defendants had the authority to use the

copyrighted photographs at issue. Even if tangentially relevant, the information requested is not proportional to the needs of the case. Defendants have provided nothing of substance to support their "belief" that the information requested will establish that Plaintiff was somehow cheating in making safety modifications to the cars at issue. The information is clearly sought for the purpose of embarrassing or harassing Plaintiff and/or the third-parties who have been subpoenaed. Plaintiff's objections are **sustained** and Plaintiff's motion is **GRANTED** as to Requests 3, 4, 10, and 11.

    2.    **Correspondence (Requests Nos. 5, 6, and 7).**

Request No. 5 seeks "[a]ll correspondence between you and Oasis related to modifications to the Vipers, the Vipers themselves, or the world record attempt." (Doc. 63-1, at 6; Doc. 63-2, at 6.) Request No. 6 seeks "[a]ll correspondence between you and VNR." (*Id.*) Request No. 7 asks for "[a]ny correspondence between you and any other person or entity related to modifications to the Vipers, the Vipers themselves, or the world record attempt." (*Id.*)

Plaintiff argues that the requests are not properly limited to correspondence regarding the photographs at issue. (Doc. 63, at 6, 7.) Defendants respond that they will limit Requests Nos. 5 and 6 to correspondence relating to "(1) the photographs at issue, (2) any consideration paid or services rendered in support of the world record attempt or as part of sponsorship, and (3) the world record

attempt." (Doc. 68, at 7.) Defendants contend the information is relevant and discoverable because

> Plaintiff has already indicated through discovery that the Viper vehicles may be one form of consideration provided in the sponsorship agreement. Defendants believe that the modifications and/or services performed on the Vipers are still another aspect of these agreements. Moreover, the modifications information is relevant to Defendants' affirmative defense of unclean hands as discussed above.

(Doc. 68, at 7.) For the reasons discussed in Section 1, *supra*, Plaintiff's objections are **sustained** and Plaintiff's motion is **GRANTED** as to Requests 5, 6, and 7. The Court, however, finds that correspondence regarding the photographs at issue should be produced, in accordance with the limitation proposed by Plaintiff – any correspondence regarding the use of the copyrighted pictures or money paid for use of the pictures. (*See* Doc. 63, at 6.)

IT IS THEREFORE ORDERED that Plaintiff's "Motion for Protective Order as to Defendants' Third-Party Subpoenas" (Doc. 63) is **GRANTED** as set forth above.

**IT IS ORDERED**.

Dated this 9th day of January, 2019.

s/ Kenneth G. Gale<br>
Kenneth G. Gale<br>
United States Magistrate Judge