# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

VIPER NÜRBURGRING RECORD LLC,

      Plaintiff,

      v.

ROBBINS MOTOR CO., LLC and
CLAYTON ROBBINS,

      Defendants.

Case No. 5:18-cv-04025-HLT

## MEMORANDUM AND ORDER

Plaintiff Viper Nürburgring Record LLC ("VNR") is an entity formed for the purpose of pursuing a world-record time on the Nürburgring race track in Nürburg, Germany. Defendant Robbins Motor Company, LLC ("RMC") and its vice president and officer, Defendant Clayton Robbins ("Mr. Robbins"),[1] made a financial contribution towards VNR's efforts in exchange for, among other things, a license to use one photograph from the event. In this action, VNR alleges willful copyright infringement by Defendants in violation of the Copyright Act, 17 U.S.C. §§ 501, et seq. VNR alleges Defendants exceeded the scope of the agreed-upon license by using more than one photo, thereby infringing on its copyrights. Defendants, in turn, assert multiple defenses and a counterclaim seeking a declaratory judgment that VNR's copyrights are invalid, unenforceable, and not infringed. This matter is now before the Court on VNR's motion for summary judgment on its affirmative claim for copyright infringement, Defendants' counterclaim, and Defendants' defenses. Doc. 86.

---

[1]    The Court will refer to RMC and Mr. Robbins collectively as "Defendants."

For the following reasons, the Court finds that VNR has established the elements of its prima facie case of copyright infringement. The Court further finds that VNR is entitled to summary judgment on Defendants' counterclaim and defenses of failure to state a claim, invalidity, non-copyrightable elements, unenforceability, express and implied license, permission, fair use, and unclean hands. But, as set forth below, the Court finds a genuine issue of material fact regarding whether the infringement was "willful." The Court similarly finds a fact issue precluding summary judgment on Defendants' defenses of equitable estoppel and innocent intent. The Court accordingly denies summary judgment on those issues.

## I.    BACKGROUND[2]

### A.    VNR's World-Record Attempt

In January 2017—the last year Vipers were manufactured—VNR announced its plan to organize a trip to the Nürburgring race track in Nürburg, Germany, hoping to set a world record on the track with one of two Viper ACR vehicles. VNR planned a first trip to Nürburg in July 2017 and a subsequent trip in August 2017, lining up professional drivers to operate the two cars and soliciting sponsors to provide financial support, the cars themselves, tires, and other spare parts. In exchange for their contributions, sponsors were to receive incentives such as exposure—i.e., their name on the cars involved in the world-record attempt—and a license to use a photo, or photos, from the event.

To publicize the attempt and provide sponsors with such exposure, VNR hired a professional photographer, Eric Meyer, to take photographs. The agreement between Mr. Meyer and VNR—executed in June 2017, before the first trip to Nürburg—provided in pertinent part that

---

[2]    In reciting the facts relevant to VNR's motion for summary judgment, the Court construes those facts in the light most favorable to Defendants as the non-moving party.

"[a]ll photographs taken shall be the property of [VNR], in perpetuity," but granted Mr. Meyer permission "to use [the] photographs <u>solely</u> for his own personal and company self-promotion." Pursuant to the agreement, Mr. Meyer took photographs for approximately ten days surrounding the first trip to Nürburg in July 2017. Mr. Meyer's photographs captured the Viper ACRs on and off the track, along with numerous images of the cars and the crew in the garage, pits, and on public roads. For each of the photos, Mr. Meyer chose the appropriate equipment and made decisions regarding factors such as the exposure, aperture, angle, and perspective of the images. From the approximately 6,000 photographs taken by Mr. Meyer, he chose those photos he considered the "best" and edited the color, tint, contrast, brightness, and other parameters of the images.

**B.    Defendants' Use of the Photographs**

Before the first Nürburg trip, Mr. Robbins—a vice president and officer of RMC, a Kansas car dealer—contacted VNR about a potential sponsorship. On June 20, 2017, Mr. Robbins sent Russ Oasis, managing member of VNR, a private message via the Viper Owners Association website asking what it would take to get RMC's name on the cars used in the world-record attempt. During this exchange, Mr. Robbins also expressed interest in using photos from the event to promote RMC and specifically inquired regarding the possibility of using the images "in social media and possibly tv ads." Mr. Oasis responded that—in exchange for a $4,000 contribution— VNR would place "a small logo [for RMC] on each car" and Mr. Robbins could "use a picture that you select from our photographer for your advertising for [RMC]." Mr. Oasis then asked whether the parties had a deal and Mr. Robbins responded that "we are in for the [$4,000]." The parties stipulate that this agreement gave RMC a license to use one photograph from the event.

The dispute in this case ultimately stems from Defendants' use of thirteen photos taken by Mr. Meyer, which VNR alleges exceeded the scope of the agreed-upon license. Following VNR's first world-record attempt, Mr. Robbins downloaded thirteen of Mr. Meyer's photos and saved copies to his computer. In late July 2017, Mr. Robbins sent those photos[3] via email to RMC employee Shannon Wood and instructed that she place one of the pictures on the RMC website. One of the photos—an image showing one of the Viper ACRs straight on with the headlights on— was posted to the website.[4] Mr. Robbins posted the same photo on his personal Facebook account. Mr. Robbins also posted photos taken by Mr. Meyer to RMC's Facebook page.[5] And, in or around late August 2017, RMC posted a banner advertisement for RMC using another one of Mr. Meyer's photos—an image of one of the Viper ACRs from the rear from a distance—to a third-party website.[6]

### C. The Dispute

In mid-September 2017, Mr. Oasis contacted Mr. Robbins regarding the use of the photographs. Mr. Oasis sent Mr. Robbins a message stating that Mr. Robbins "can't just use [VNR's] pictures in [RMC's] advertising" and that if Mr. Robbins wanted to "license the use of the picture" he would need to pay an additional sum. If not, Mr. Oasis stated that Mr. Robbins would need to "remove the shot" from RMC's advertising. Mr. Oasis continued: "Those pics are our property and we deserve to be compensated for them . . . Would you like to license that shot? It's the fair thing to do." In response, on September 18, 2017, Mr. Robbins explained that it was

---

[3]   Following registration in October 2017, these photographs bear U.S. Copyright Registration Nos. VA 2-086-706, VA 2-086-709, VA 2-086-711, VA 2-086-712, VA 2-086-713, VA 2-086-715, VA 2-086-717, VA 2-086-719, VA 2-086-720, VA 2-086-721, VA 2-086-722, VA 2-086-724, and VA 2-082-355.

[4]   Following registration in October 2017, this photograph bears U.S. Copyright Registration No. VA 2-086-709.

[5]   Following registration in October 2017, these photographs bear U.S. Copyright Registration Nos. VA 2-086-715, VA 2-086-717, VA 2-086-720, and VA 2-086-721.

[6]   Following registration in October 2017, this photograph bears U.S. Copyright Registration No. VA 2-086-719.

his understanding that he could use "photos" and asked for clarification regarding which "shot" Mr. Oasis was referencing. The next day, Mr. Oasis responded that "[t]he picture I'm referring to is the one where you see the back of the car on the ring and your ad is over it"—seemingly a reference to the image used in RMC's banner advertisement.

The next month, Mr. Oasis again reached out to Mr. Robbins regarding his use of the photos. On October 15, 2017, Mr. Robbins sent Mr. Oasis a message referencing those communications. In his message, Mr. Robbins expressed his understanding that his agreement with VNR permitted him to "use a couple photos." Mr. Robbins further stated:

> If you are dead set on my taking the photo down, I will have no other option but to flame you and Viper Exchange on the forums. My reputation is what built my company and honoring my word. I'm sorry that's not the case for you and how you do business. I'll need to get another banner photo from my IT guy. But if I do I'm going to let everyone know what a sham this whole Ring Record attempt really was.

Around the same time that VNR was contacting Mr. Robbins regarding the purportedly unauthorized use of the photos, VNR and Mr. Meyer executed an addendum to their June 2017 agreement, reiterating and confirming the intent to transfer and assign any ownership rights in the photos to VNR in exchange for the money paid to Mr. Meyer under the agreement. The addendum was fully executed on October 16, 2017. On October 18, 2017—two days after executing this addendum and three days after Mr. Robbins's message—VNR registered the photos used by Defendants with the U.S. Copyright Office. Of the thousands of photographs taken by Mr. Meyer at the July 2017 world-record attempt, VNR registered only those thirteen photographs at issue in this case.[7]

---

[7]  As set forth in note 3, *supra*, these photographs bear U.S. Copyright Registration Nos. VA 2-086-706, VA 2-086-709, VA 2-086-711, VA 2-086-712, VA 2-086-713, VA 2-086-715, VA 2-086-717, VA 2-086-719, VA 2-086-720, VA 2-086-721, VA 2-086-722, VA 2-086-724, and VA 2-082-355.

Approximately five months later, in March 2018, Mr. Oasis again reached out to Mr. Robbins about his use of the photos. During that exchange, Mr. Robbins claimed that he "shared [the] pictures on Facebook to promote the [world-record] event" and explained that he thought he was only using one photo for advertising, as agreed upon by the parties, and believed that the photos he posted to Facebook were not subject to the parties' agreement. Mr. Robbins also stated that he had "taken down all the pictures."

VNR ultimately filed this lawsuit against Defendants on April 4, 2018, alleging one claim for copyright infringement related to the thirteen photographs registered by VNR. Doc. 85. VNR seeks actual damages as well as statutory damages for "willful" infringement. *Id.* In response, Defendants assert a litany of defenses and affirmative defenses, as well as a counterclaim seeking a declaratory judgment that VNR's copyrights are invalid and unenforceable and that Defendants did not commit any infringement. *Id.* VNR now moves for summary judgment on its affirmative claim for copyright infringement, Defendants' counterclaim, and Defendants' defenses. Doc. 86.

## II.    STANDARD

Summary judgment is appropriate where the moving party demonstrates that "there is no genuine dispute as to any material fact" and it is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In applying this standard, courts must view the facts and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

# III.    ANALYSIS

## A.    Claim for Copyright Infringement

In this case, VNR asserts one claim for copyright infringement under the Copyright Act. Doc. 85. To establish copyright infringement, a plaintiff must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see also Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196 (10th Cir. 2005). Here, in their opposition to summary judgment, Defendants challenge both elements, arguing VNR can show neither ownership of a valid copyright nor copying by Defendants. Doc. 90 at 23-25. The Court addresses the parties' arguments with respect to each element.

### 1.    Ownership

The uncontroverted evidence establishes the first element of VNR's prima facie case. The parties stipulate that VNR owns the copyrights at issue.[8] Doc. 85 at 2-3 (stipulating that VNR owns the copyright registrations to the thirteen photos at issue in this case). And the copyrights are valid. To prove validity of the copyrights, VNR presents evidence of the certificates of registration obtained for the photographs. Each certificate identifies VNR as the copyright claimant and each

---

[8]    Even if the parties had not so stipulated, however, it is well-established that—although copyright ownership generally vests in the author of the work—there is an exception for "work made for hire." *Fred Riley Home Bldg. Corp. v. Cosgrove*, 864 F. Supp. 1034, 1037 (D. Kan. 1994). Under this exception, the employer of the person who prepares the work is the author and owns the copyright unless there is a written agreement to the contrary. *Id.* When a work is classified as one "made for hire," it determines not only the initial ownership of the copyright but all rights under the Copyright Act. *Id.* Here—as is clear from the face of each of the thirteen certificates of registration produced by VNR—the photographs at issue were "work made for hire." VNR hired Mr. Meyer to take photographs of the world-record attempt and ownership of those photos therefore vests in VNR. The language of the agreements between VNR and Mr. Meyer only bolsters this conclusion. The initial estimate provided by Mr. Meyer stated that VNR would "own[] all edited and raw media to be delivered" by Mr. Meyer. The formal written agreement between VNR and Mr. Meyer further provided that "[a]ll photographs taken shall be the property of [VNR], in perpetuity" (although the agreement did grant Mr. Meyer limited permission to use the photos for promotional purposes). Finally, the October 2017 addendum to the agreement confirmed Mr. Meyer's intent to transfer any ownership rights in the photos to VNR. These considerations provide further support for a finding of ownership by VNR.

certificate shows that the photos were registered within three months of first publication. Section 410(c) of the Copyright Act provides that such certificates constitute prima facie evidence of validity. 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."); *see also Palladium Music*, 398 F.3d at 1196. The certificates presented by VNR therefore create a rebuttable presumption that its copyrights are valid. *See In re Indep. Servs. Orgs. Antitrust Litig.*, 964 F. Supp. 1469, 1474 (D. Kan. 1997) (holding that § 410(c) "creates a rebuttable presumption of the copyright holder's originality and that the subject matter of the work is copyrightable"). Defendants bear the burden to overcome that presumption by offering some evidence to dispute validity. *See Harris Mkt. Research v. Marshall Mktg. & Commc'ns, Inc.*, 948 F.2d 1518, 1526 (10th Cir. 1991).

Defendants attempt to rebut the presumption of validity by arguing that the photographs at issue are not "original." Doc. 90 at 24-25. Under the Copyright Act, copyright protection extends only to "original works of authorship." 17 U.S.C. § 102(a). Within the copyright context, "original" means only that the work was independently created by the author, as opposed to copied from other works, and that it "possesses at least some minimal degree of creativity." *Feist*, 499 U.S. at 345. The requisite level of creativity is "extremely low" and "<u>even a slight amount will suffice</u>." *Id.* (emphasis added). "The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." *Id.* (internal quotations omitted). "Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying." *Id.*

And, in the specific context of photographs, "courts have recognized repeatedly that the creative decisions involved in producing a photograph may render it sufficiently original to be copyrightable and 'have carefully delineated selection of subject, posture, background, lighting, and perhaps even perspective alone as protectable elements of a photographer's work.'" *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1077 (9th Cir. 2000) (quoting *Los Angeles News Serv. v. Tullo*, 973 F.2d 791, 794 (9th Cir. 1992)). "Elements of originality in a photograph may include posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved." *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992).

The photographs at issue in this case meet this standard. Hired in part because of his knowledge of racing and experience photographing automotive events, Mr. Meyer had the freedom to take pictures of anything he believed would properly document the world-record attempt and promote the event and its sponsors. His pictures captured the Viper ACRs on and off the track, along with numerous images of the cars and the crew in the garage, pits, and on public roads. For each of the photographs, Mr. Meyer selected the camera and lens and manually adjusted the exposure (shutter speed), the aperture, and the ISO. Mr. Meyer also selected the angle and perspective from which he took each photograph, with some taken while stationary and others taken in motion. For some of the photos, Mr. Meyer even hung out of a moving vehicle to capture the desired image. After taking the photos, Mr. Meyer selected for editing those he believed were the "best" and, using editing software, adjusted the color temperature, tint, exposure, contrast, highlights, shadows, clarity, and brightness of the images.

Defendants' argument against originality is premised on the fact that (1) Mr. Meyer allegedly received "input" from Mr. Oasis and other individuals regarding the photos, and (2) other professional and amateur photographers at the world-record event took the same, or similar, shots

as Mr. Meyer. Doc. 90 at 24-25. With respect to the first argument, Defendants do not assert any facts regarding the extent or content of Mr. Oasis's (and the other unidentified individuals') alleged input, nor do Defendants provide any authority to support this argument. Indeed, as argued in VNR's reply, if simply providing "input" to a photographer renders the resultant photos "unoriginal," no photographer of an event such as a wedding (where the photographer is clearly instructed to photograph the bride and groom) would ever be able to obtain copyright protection for his work. And, accepting Defendants' second argument as true, it would conceivably be impossible for any photographer at a well-attended event such as a sporting game or concert to obtain protection for photographs taken at such an event. Putting aside these unsupported arguments, Defendants offer no actual evidence to contradict VNR's analysis or to support their assertions that the photographs are not original. Defendants therefore fail to rebut the statutory presumption of validity.

The creative decisions exercised by Mr. Meyer in taking the photographs plainly exceed the minimal degree of creativity required for originality. Indeed, as the Eleventh Circuit has recognized, "[e]xcept for a limited class of photographs that can be characterized as 'slavish copies,' courts have recognized that most photographs contain at least some originality in their rendition of the subject matter." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1234 (11th Cir. 2010). The Court accordingly finds that VNR owns valid copyrights for the thirteen photographs at issue in this case and that these copyrights contain material protected under the copyright laws.

### 2.      Copying

Having determined that VNR has established ownership of a valid copyright sufficient to satisfy the first element of its case, the Court turns to the second element: whether Defendants have "copied" protectable elements of the copyrighted work.

Copying is a shorthand reference for the act of infringing any of the copyright owner's exclusive rights set forth in 17 U.S.C. § 106, which include the right to "display" the copyrighted work publicly. *Paramount Pictures Corp. v. Video Broad. Sys., Inc.*, 724 F. Supp. 808, 819 (D. Kan. 1989); *see also* 17 U.S.C. § 106(5). This examination involves two separate inquiries: (1) whether the defendant, as a factual matter, copied the plaintiff's work, and (2) whether, as a mixed issue of fact and law, those elements that were copied were protected. *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir. 1996). With respect to the former inquiry, although the fact of copying is difficult to prove directly, the plaintiff can indirectly prove copying by establishing that the defendant had access to the copyrighted work and there are probative similarities between the copyrighted material and the allegedly copied material. *Id.* But a finding that the defendant copied some aspect of the work does not end the court's analysis. *Id.* The latter inquiry dictates that liability for copyright infringement attaches only where protected elements of a copyrighted work are copied. *Id.* To impose such liability, the court must find substantial similarity between those aspects of the plaintiff's work that are legally protectable and the copied work. *Id.*

Here, the undisputed evidence establishes copying by Defendants. The parties stipulate that the agreement negotiated between Mr. Robbins and VNR conferred a license to use only <u>one</u> photograph in exchange for the sponsorship. The issue, therefore, is whether Defendants copied more than the single agreed-upon photo. Following VNR's first world-record attempt, Mr. Robbins

downloaded thirteen of the photos and saved copies of those photos to his computer. It is uncontroverted that one of those photos (bearing Registration No. VA 2-086-709) was posted to the RMC website and was also posted on Mr. Robbins's personal Facebook account. It is similarly uncontroverted that at least four of the photos were posted to RMC's Facebook page—including the photographs bearing Registration Nos. VA 2-086-715, VA 2-086-717, VA 2-086-720, and VA 2-086-721. RMC also posted a banner advertisement for RMC featuring another one of the photos (Registration No. VA 2-086-719) to a third-party website. Each of these acts constitutes a "display" of the photographs. *See* 17 U.S.C. § 101 (stating that "display" includes any showing of a "copy" of the work "either directly or by means of a film, slide, television image, or any other device or process"). The uncontroverted evidence therefore establishes that Defendants copied more than the agreed-upon photograph.

This copying of the photographs—aside from the one agreed-upon photo—was not, as Defendants contend, expressly permitted or licensed. Again, it is undisputed that the license granted to Defendants only permitted use of a <u>single photograph</u>. Defendants therefore had a license or express permission to use only one photo. And the Court is not persuaded by Defendants' argument that they had an "implied license" to use the additional photos. To establish the existence of an implied license, a defendant must show: "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Kid Stuff Mktg., Inc. v. Creative Consumer Concepts, Inc.*, 223 F. Supp. 3d 1168, 1181 (D. Kan. 2016) (internal quotations omitted). Here, Defendants have not presented any evidence suggesting that they somehow "requested" creation of the photographs at issue in this case. Because implied license is an affirmative defense to a claim of copyright infringement, Defendants

bear the burden of establishing its applicability. *See Latimer*, 601 F.3d at 1235. Given that Defendants have not met even the first element of an implied license (let alone the other two[9]), the Court rejects their implied license argument.

Defendants had a license to use only one photograph and exceeded the scope of that license by copying more than one photo. Because both elements of its prima facie case are met, VNR has established its claim of copyright infringement.

### 3. Willfulness

The final question that must be addressed with respect to VNR's claim for copyright infringement is whether the infringement here was "willful." In this case, VNR asserts willful infringement supporting an award of enhanced statutory damages pursuant to § 504(c)(2) of the Copyright Act. 17 U.S.C. § 504(c)(2).[10] "Willfully," as used in § 504(c)(2), means "with knowledge that the defendant's conduct constitutes copyright infringement." 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.04[B][3][a][11]; *see also Songmaker v. Forward of Kan., Inc.*, 1993 WL 484210, at *3 (D. Kan. 1993). "Knowledge may be actual or constructive and can be proved without direct evidence such as by inference drawn from the defendant's actions." *Songmaker*, 1993 WL 484210, at *3. "[O]ne who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not 'willful' for these purposes." 4 Nimmer on Copyright § 14.04[B][3][a]. "But one

---

[9]  Defendants likewise offer no evidence that VNR delivered the photographs to Defendants so as to meet the second element of an implied license. Nor have Defendants shown that VNR intended that Defendants copy and distribute multiple photos—indeed, the evidence suggests the opposite.

[10]  Under the Copyright Act, a copyright owner is entitled to recover either actual or statutory damages for an infringement. 17 U.S.C. § 504(a). If there is no evidence of willful infringement, the minimum statutory damage per copyright infringed is $750 and the maximum statutory damage is $30,000. *Id.* at § 504(c)(1). If the infringement was committed willfully, however, the maximum statutory damage increases to $150,000 per copyright infringed. *Id.* at § 504(c)(2). Here, VNR alleges Defendants' infringement was willful, entitling VNR to the enhanced damages figure.

[11]  Hereinafter referred to simply as "Nimmer on Copyright."

who 'recklessly disregards' a copyright holder's rights, even if lacking actual knowledge of infringement, may be subject to enhanced damages." *Id.*

Here, the Court finds that there is a genuine issue of material fact regarding whether Defendants' infringement was willful, precluding summary judgment on this issue. In its motion for summary judgment, VNR argues the infringement was willful primarily because: (1) Mr. Robbins knew, before the world-record event, that he was authorized to use only a single photograph, but nonetheless downloaded thirteen of the photos; and (2) Defendants continued to use the photos after Mr. Oasis's September and October 2017 messages to Mr. Robbins. Doc. 87 at 31-32.

With respect to VNR's first argument, the Court agrees that it is undisputed that Defendants' license only permitted them to use one photo, that Mr. Robbins understood this to be the case, and that he downloaded thirteen of the photos. The Court disagrees, however, that the record establishes that Mr. Robbins understood that he was <u>infringing</u> on VNR's copyright, so as to satisfy the standard for willfulness. Mr. Oasis first contacted Mr. Robbins regarding his use of the photographs in September 2017. This initial communication, however, was not a model of clarity. In his message, Mr. Oasis advised Mr. Robbins that he "can't just use [VNR's] pictures in [RMC's] advertising" and that if Mr. Robbins wanted to "license the use of the picture" he would need to pay an additional sum. If not, Mr. Oasis stated that Mr. Robbins would need to "remove the shot" from RMC's advertising. Mr. Oasis's alternative use of the phrases "the pictures," "the picture," "the shot," and "the shots" understandably left Mr. Robbins wondering exactly which photo Mr. Oasis was referencing. When Mr. Robbins requested clarification regarding which "shot" Mr. Oasis was referring to, Mr. Oasis responded that he was referencing the image used in RMC's banner advertisement. <u>He did not mention any of the other photographs at this time</u>.

Indeed, based on the evidence before the Court, Mr. Oasis did not expressly mention the entirety of the photos until his message in March 2018. And during that exchange, Mr. Robbins explained that he only posted the photos on Facebook to promote the world-record event, that he believed the photos posted to Facebook were not subject to the parties' agreement, and that he had taken the photos down. Mr. Robbins further explained that he thought he was only using one photo for advertising, as agreed upon by the parties. Mr. Robbins's comments regarding this mistaken belief are further borne out by his statements to Mr. Oasis in September 2017 (that it was his understanding that he could use "photos") and October 2017 (that his understanding of the agreement was that it permitted him to "use a couple photos"). The uncontroverted evidence does not establish that Mr. Robbins "knew" his conduct constituted infringement. The evidence suggests that a reasonable jury could conclude that Mr. Robbins was mistaken in his understanding of what was and was not permitted pursuant to his agreement with VNR. This does not satisfy the "willfulness" standard.

And, although "reckless disregard" supporting a finding of willfulness "classically arises when defendant ignores a warning letter sent by plaintiff's counsel" (4 Nimmer on Copyright § 14.04[B][3][a]), here there was no such letter. Even (generously) construing either Mr. Oasis's September 2017 or October 2017 message to Mr. Robbins as a "notice and demand to stop infringement," as characterized by VNR in its motion, neither of these messages were "sufficiently specific" to support a finding of reckless disregard. *Id.* The Court therefore finds that the issue of willfulness here presents a genuine issue of material fact that is best left for trial. And, as courts in this District have previously noted, the issue of willfulness is closely tied to the issue of statutory damages; therefore, it will not be inconvenient for the parties to try these issues together. *See Schmidt v. Holy Cross Cemetery, Inc.*, 1993 WL 512414, at *5 (D. Kan. 1993).

### B. Counterclaim for Declaratory Judgment

In this case, Defendants assert a counterclaim for declaratory judgment of "invalidity, unenforceability and non-infringement" of the copyrights at issue. Docs. 15, 85. Defendants seek a declaration from the Court that VNR's copyrights are invalid, unenforceable, and not infringed. *Id.* VNR moves for summary judgment on this counterclaim. Doc. 86. Disposition of the counterclaim is necessarily linked to disposition of VNR's affirmative claim for copyright infringement. In accordance with its above holding on VNR's infringement claim, therefore, the Court finds that VNR's copyrights are valid, enforceable, and that Defendants infringed on those copyrights. The Court therefore grants summary judgment in favor of VNR on Defendants' request for declaratory judgment.

### C. Defenses

Defendants assert the following defenses to VNR's claim for copyright infringement: failure to state a claim upon which relief can be granted, invalidity, permission, fair use, express and implied license, non-copyrightable elements, unclean hands, innocent intent, equitable estoppel, copyright misuse, and unenforceability. Doc. 85 at 8-9. VNR moves for summary judgment on each of those defenses with the exception of copyright misuse.[12] Doc. 86.

It is not necessary, however, for the Court to address the parties' arguments with respect to each of the challenged defenses, as the majority of those arguments are resolved by virtue of the Court's above holdings. The Court's holding in favor of VNR on its infringement claim and on

---

[12] The Court notes that, although VNR purports to move for summary judgment on Defendants' remaining defenses, VNR does not make any argument with respect to Defendants' copyright misuse defense. The Court recognizes that VNR ostensibly "objects to the inclusion of misuse as a defense," but this objection was overruled in the pretrial order. Doc. 85 at 9 n.1 (noting VNR's objection, the parties' respective arguments on this issue, and stating that "[t]he objection is overruled"). Accordingly, the Court considers Defendants as having asserted a defense of copyright misuse, which is not specifically mentioned—let alone substantively addressed—by VNR in its request for summary judgment. The Court therefore considers VNR as having moved for summary judgment on all of Defendants' remaining defenses with the exception of its defense of copyright misuse.

Defendants' declaratory judgment counterclaim necessarily forecloses the majority of the defenses—specifically, the defenses of failure to state a claim, invalidity, non-copyrightable elements, and unenforceability. And the arguments underlying Defendants' license and permission defenses—i.e., that Defendants had an implied or express license or VNR's permission to use all thirteen photos—are addressed and rejected in Part III.A.2, above. But, given the holding in Part III.A.3 that a genuine issue of fact exists regarding whether the infringement here was "willful," the Court denies VNR's bid for summary judgment on Defendants' innocent intent defense.

To summarize, therefore, the Court grants VNR's request for summary judgment with respect to the defenses of failure to state a claim, invalidity, non-copyrightable elements, unenforceability, express and implied license, and permission. The Court denies summary judgment on Defendants' innocent intent defense. The Court now proceeds to its analysis of VNR's summary judgment motion with respect to those challenged defenses that were not already addressed: fair use, unclean hands, and equitable estoppel.

### 1. Fair Use

To counter VNR's claim of copyright infringement, Defendants contend their use of the pictures cannot be considered infringement because it was "fair use" of the work, as provided by § 107 of the Copyright Act. The fair use defense "is a mixed question of law and fact and 'may be resolved on summary judgment if a reasonable trier of fact could reach only one conclusion.'" *Schmidt*, 1993 WL 512414, at *3 (quoting *Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. 1989)). Section 107 lists four factors to be considered in determining fair use: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion of the work used in relation to the work as a whole; and (4) the effect of the use on the potential market for or value of the work. 17 U.S.C. § 107; *see also Schmidt*, 1993 WL 512414, at *3. But

§ 107 is not meant to provide an exclusive list of factors that define fair use, and, rather, "permits [and requires] courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Evolution, Inc. v. SunTrust Bank*, 342 F. Supp. 2d 943, 955 (D. Kan. 2004) (internal quotations omitted). Because fair use is an affirmative defense, Defendants bear the burden to prove each element. *See Latimer*, 601 F.3d at 1239 ("[T]he fair use of copyrighted work is an affirmative defense and should be pleaded as such.") (citing *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 561 (1985)).

Here, consideration of the factors weighs against a finding of fair use. First, the Court examines the purpose and character of Defendants' use, including whether such use was commercial in nature. Putting aside the photo used in the banner advertisement, which Defendants contend was their "one photo" permitted under the terms of the agreement with VNR, Defendants posted one photo directly to RMC's website. Other photographs were posted to RMC's Facebook page, which is used for a promotional purpose. The evidence therefore suggests Defendants' use was for commercial, rather than non-commercial, purposes.

Second, the Court considers the nature of the copyrighted work. "Use of purely informational material is more readily found to be fair than use of creative works." *Schmidt*, 1993 WL 512414, at *4 (quoting *Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*, 786 F.2d 1400, 1409 (9th Cir. 1986)). To that end, "the more creative a work, the more protection it should be accorded from copying; correlatively, the more informational or functional the plaintiff's work, the broader should be the scope of the fair use defense." 4 Nimmer on Copyright § 13.05[A][2][a]. As evidenced by the extent of the creative effort expended by Mr. Meyer in capturing and editing the photos, the images at issue here are clearly creative—rather than

informational or functional—works. Thus, the nature of the work weighs against a finding of fair use.

Third, the Court finds that the amount and substantiality of the portion of the work used also weighs against a finding of fair use. "In general, it does not constitute a fair use if the entire work is reproduced." 4 Nimmer on Copyright § 13.05[A][3]. Here, there is no dispute that Defendants published the photographs in their entirety.

Fourth, and finally, the Court considers the effect upon the potential market for, or value of, the copyrighted work. In other words, the fourth factor requires the Court consider both "the extent of market harm caused by the particular actions of the alleged infringer, [and] also 'whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market' for the original." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994) (quoting 4 Nimmer on Copyright § 13.05[A][4]). And the Supreme Court has held that a defendant "would have difficulty carrying the burden of demonstrating fair use without favorable evidence about relevant markets." *Id.* Here, Defendants present no relevant market evidence and the onus is upon them to come forward with evidence sufficient for a jury to find in their favor. Based on the record before it, therefore, the Court finds that this factor also weighs against a finding of fair use.

Accordingly, after considering the evidence in the light most favorable to Defendants, the Court finds that no reasonable trier of fact could conclude that Defendants' use of the pictures was fair. For these reasons, the Court grants summary judgment in favor of VNR on Defendants' fair use defense.

## 2.    Unclean Hands

The Court next turns to Defendants' unclean hands defense. Defendants ostensibly premise this defense on their allegation that VNR "set up" this litigation by not registering its copyrights before the infringement, by executing the addendum to its agreement with Mr. Meyer, and, generally, by "allowing" Defendants to infringe on its copyright for "months and months" before notifying them of the infringement.

The Court finds that VNR is entitled to summary judgment on this defense for several reasons. First, with respect to Defendants' suggestion that VNR acted improperly in not registering its copyrights before the infringement, the Copyright Act specifically contemplates such situations—i.e., where a copyright owner does not apply for registration until <u>after</u> the infringing conduct. *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019) (noting that "[a]n author gains 'exclusive rights' in her work immediately upon the work's creation" but that "[b]efore pursuing an infringement claim in court . . . a copyright claimant generally must comply with § 411(a)'s requirement that 'registration of the copyright claim has been made'"). Second, Defendants do not present any evidence to support their argument that the addendum to VNR's agreement with Mr. Meyer was somehow improper. Third, and finally, the Court notes that, although available as a defense in a copyright infringement action, the doctrine of unclean hands "is recognized <u>only rarely</u>, when the plaintiff's transgression is of serious proportions and relates directly to the subject matter of the infringement action." 4 Nimmer on Copyright § 13.09[B] (emphasis added). To this end, other Circuits have recognized that unclean hands is applied "only where the wrongful acts 'in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.'" *Mitchell Bros. Film Grp. v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979). The doctrine "is not

applied where plaintiff's misconduct is not directly related to the merits of the controversy between the parties." *Id.* Put differently, "[t]he alleged wrongdoing of the plaintiff does not bar relief unless the defendant can show that he has personally been injured by the plaintiff's conduct." *Id.*

The alleged wrongful acts here are not directly related to the merits of the controversy between the parties and Defendants have not established that they have personally been injured by VNR's conduct. Defendants have not come forward with evidence from which a reasonable jury could conclude that this is one of those "rare" cases where application of the unclean hands doctrine is warranted. The Court therefore grants summary judgment in favor of VNR on Defendants' unclean hands defense.

### 3. Equitable Estoppel

Finally, the Court considers the merits of Defendants' affirmative defense of equitable estoppel. Equitable estoppel is available as a defense to a copyright infringement action and "may deprive a plaintiff of an otherwise meritorious copyright infringement claim." *Serv. & Training, Inc. v. Data Gen. Corp.*, 963 F.2d 680, 689 (4th Cir. 1992); *see also* 4 Nimmer on Copyright § 13.07[A]. Although there is no binding authority articulating the elements of estoppel as a defense to an infringement claim, other Circuits have held that a defendant must prove four elements to establish estoppel: (1) the plaintiff must know the facts of the defendant's infringing conduct; (2) the plaintiff must intend that its conduct shall be acted on or must so act that the defendant has a right to believe that it is so intended; (3) the defendant must be ignorant of the true facts; and (4) the defendant must rely on the plaintiff's conduct to its injury. *Carson v. Dynegy, Inc.*, 344 F.3d 446, 453 (5th Cir. 2003). The plaintiff may be estopped from asserting its rights under a copyright if the plaintiff "has induced or caused the defendant to perform [the acts of alleged infringement]." 4 Nimmer on Copyright § 13.07[A]. Even short of such overt acts,

however, a holding out sufficient to raise an estoppel defense may be accomplished by silence and inaction, particularly if prolonged. *Id.*; *see also Carson*, 344 F.3d at 453 ("Furthermore, it is accepted that estoppel may be accomplished by a plaintiff's silence and inaction.").

Considering the elements, the Court finds that summary judgment is inappropriate on Defendants' equitable estoppel defense. First, the Court finds that a reasonable trier of fact could conclude that VNR knew the facts of Defendants' infringing conduct. In October 2017, VNR registered the thirteen photographs that are the subject of this action, suggesting VNR was aware of Defendants' conduct well before Mr. Oasis raised this issue with Mr. Robbins in his March 2018 message.

Second, this timing arguably suggests that VNR intended that its conduct be acted upon. Again, the timing of the registration of the copyrights suggests that VNR knew in October 2017 that Defendants were using thirteen photos without authorization. Yet Mr. Oasis did not tell Mr. Robbins that VNR took issue with his use of those photographs until months later—before this point, VNR indicated that it only took issue with Defendants' use of the image in its banner advertisement. Such silence and inaction may constitute a "holding out" sufficient to raise an estoppel defense.

Third, Defendants must be ignorant of the true facts. Here, the evidence suggests Mr. Robbins was unaware he was infringing on VNR's copyright until his receipt of Mr. Oasis's March 2018 message. Upon receipt of that message, Mr. Robbins explained that he only posted the photos on Facebook to promote the world-record event, that he believed the photos posted to Facebook were not subject to the parties' agreement, and that he had now taken those photos down. The evidence therefore arguably indicates Mr. Robbins was mistaken in his understanding of what was and was not permitted under his agreement with VNR.

Fourth, the Court finds that a reasonable trier of fact could conclude that Defendants relied on VNR's conduct to their detriment. Again, drawing all reasonable inferences in Defendants' favor, the evidence suggests Mr. Robbins was unaware of the infringement until he received Mr. Oasis's message in March 2018—at which point he removed the photographs. Had VNR made the scope of its concerns clear earlier, it is reasonable to believe that Defendants would have removed the photos at that point. For these reasons, the Court denies VNR's request for summary judgment on Defendants' defense of equitable estoppel.

## IV. CONCLUSION

THE COURT THEREFORE ORDERS that VNR's Motion for Summary Judgment (Doc. 86) is GRANTED IN PART and DENIED IN PART as set forth in Part III, *supra*.

IT IS SO ORDERED.

Dated: September 9, 2019                          /s/  *Holly L. Teeter*
                                                 HOLLY L. TEETER
                                                 UNITED STATES DISTRICT JUDGE